HUNTER v. MOBLEY.

1. The individuals constituting the board of county commissioners are not guilty of a wilful or negligent mismanagement of county funds, where their error, if any, proceeded solely from a misconstruction of the law.
2. The law gives the sheriff on his accounts for dieting prisoners and transporting convicts no preference over other county claims; and there being a deficiency of county funds, he is entitled to only the same *pro rata* as other county creditors.
3. County taxes are divided by law amongst the several objects of county expenditure; and the county commissioners may not draw a check on the county treasurer to pay a claim, unless there are funds in the treasury applicable to the class of expenditures to which such claim belongs.
4. Where there are funds in hand applicable to the claim of a county creditor, which the county commissioners refuse to pay, his remedy is mandamus to compel the commissioners to issue their check for its payment, and not action against the individual members of the board for damages.

Before HUDSON, J., Lancaster, March, 1886.

This was an action, entitled "John P. Hunter, sheriff of Lancaster County, against J. B. Mobley, D. O. Potts, and J. Q. McManus, county commissioners of Lancaster County." The opinion states the case.

*Messrs. R. E. & R. B. Allison et al.*, for appellant.

*Mr. Ira B. Jones*, contra.

February 28, 1887. The opinion of the court was delivered by

MR. JUSTICE McIVER. This action was brought by the plaintiff against the defendants in their individual capacity, and not in their official capacity as county commissioners, to recover damages for their failure and refusal to issue checks to him on the county treasurer for the amount of his claims for dieting prisoners in jail, and for transporting convicts to the penitentiary, which had been duly audited and allowed by the board of county commissioners. The complaint also alleges wilful and

negligent mismanagement of the county funds by the defendants as county commissioners, whereby the plaintiff claims to have sustained damages to the amount of five hundred dollars. At the close of the testimony on behalf of the plaintiff, a motion for non-suit was submitted and granted by his honor, J. H. Hudson, upon the grounds stated by him in the order which is set out in the record. Thereupon the plaintiff appealed upon the several grounds stated in the record, which need not be set out in full here, as we do not deem it necessary to consider them *seriatim,* but simply propose to determine what we regard the material questions presented by them:

So far as the charge of wilful or negligent mismanagement of the county funds is concerned, it is quite clear that there is not the slightest evidence to sustain it, and we may, therefore, dismiss that matter from our consideration. If the defendants committed any error at all, we think the testimony shows that such error proceeded from a misconstruction of the law, and not from any wilful purpose to wrong the plaintiff or any intentional neglect of their official duties.

But we do not see that the defendants are in error in their construction of the law. The case of the plaintiff rests upon the theory that the sheriff is entitled by law to a preference over the other creditors of the county in the payment of such of his claims as are for dieting prisoners in jail and transporting convicts to the penitentiary. If such a preference has been given, it must be in some statute expressly providing for it, and we know of no such statute. That which is relied upon for the purpose (sections 622 and 624 of the General Statutes), does not appear to us to confer any such preference. The language of the former is: "Fees of sheriffs, in State cases, at the rates allowed by law. Amounts for dieting prisoners in jail to be paid monthly." This language certainly does not even imply a preference, but simply fixes the time when such claims shall become payable. The language of section 624 is: "All amounts found due to the sheriff, or other person in charge of the jail, for dieting prisoners and for transporting convicts to the penitentiary, must be computed monthly, and paid out of any funds applicable thereto." This language is still further from implying a preference over all other

creditors, for the concluding words, "*paid out of any funds appli-cable thereto*," conclusively show that no preference could have been intended; for they necessarily imply that there may be other funds in the county treasury which are not applicable to claims of the class in question.

Indeed, the tenor of the whole act shows that the scheme is that the county taxes shall be divided amongst the several objects of county expenditure, so that the amount applicable to one object shall not be absorbed in the others. Accordingly, we find in section 631 that the county commissioners are required, on or before the first day of November in each year, to make an estimate for all county expenses for the fiscal year then ensuing, "which shall contain a certain amount necessary for bridges, for repairing or rebuilding court houses and jails, for the poor, for accounts and claims of officers and all other persons, and for stationery," &c. And when it is seen that the general assembly, at the same session at which the general statutes were adopted, passed another act for the purpose of defining the duties of the county commissioners and the other officers therein named, "in reference to the auditing, allowing, and payment of claims," in which the county commissioners are expressly forbidden to draw any checks for the payment of any claims against the county until they are notified by the county treasurer that there are sufficient funds in the county treasury *applicable to the payment of such checks* (17 *Stat.*, 891), it is quite clear that the county commissioners would have no authority to draw any check to pay the claim of a sheriff for dieting prisoners in jail until they were first notified that there were funds in the county treasury, *applicable to such a claim*, sufficient to pay such check, even though there might be funds in the county treasury at the time applicable to some other object of county expenditure. We are unable to see, therefore, that the law gives any preference to the sheriff over other creditors in the payment of claims for dieting prisoners in jail or transporting convicts to the penitentiary. It may be that such a preference ought to be given to the sheriff, but as our province is simply to declare what the law is, and not what it ought to be, we propose to confine ourselves to our own province.

It seems that the predecessors of the defendants in the office of

county commissioners did, in November, 1884, in accordance with the requirements of section 631, *supra*, make an estimate for the several objects of county expenditure for the fiscal year ending October 31, 1885, in which the amount estimated as necessary for the payment of the sheriff's claims was set down at fifteen hundred dollars. It seems, however, that the "court expenses," as they are termed, were unusually large for that year, the sheriff's claims amounting to $2,398.11, of which he has already received $2,062.78, an amount very considerably exceeding the estimate, which was doubtless owing to the fact that an act was passed authorizing the county commissioners to apply a certain unexpended balance of funds in the treasury, collected for the payment of the interest on railroad bonds, amounting to something over eighteen hundred dollars, to the payment of the ordinary county expenses, apportioning the same amongst the various funds, as in the judgment of the county commissioners might seem best. 19 *Stat.*, 282. So that it appears that the sheriff has actually received a much larger proportion of his claims than the estimate made for him, and as his claims for dieting prisoners in jail and transporting convicts to the penitentiary are entitled to no preference over other claims, we do not see how this action can be maintained on the facts adduced in evidence by the plaintiff.

If at any time there were funds in the hands of the county treasurer applicable to the claims due the sheriff, then his remedy was by mandamus to compel the county commissioners to issue checks for their payment, and not by an action for damages against the individuals composing the board. It seems to us that in any view of the case, the plaintiff has failed to make out any cause of action against the defendants, and that the non-suit was properly granted.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.